1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                       FOR THE DISTRICT OF OREGON

11   ESTATE OF WILLARD SWORDEN, BY )
     AND THROUGH PERSONAL REPRE-   )
12   SENTATIVE, SCOTT SWORDEN, AND )
     SCOTT SWORDEN INDIVIDUALLY,   )     No.  CV-04-1048-HU
13                                 )
                    Plaintiffs,    )
14                                 )
          v.                       )
15                                 )
     REYNOLDS METALS COMPANY, a    )
16   Delaware corporation, ALCOA   )     OPINION & ORDER
     INC., a Pennsylvania corpor-  )
17   ation, and ESIS, a Pennsyl-   )
     vania corporation,            )
18                                 )
                    Defendants.    )
19   _____)

20   Peter O. Hansen
     LAW OFFICES OF PETER O. HANSEN
21   620 S.W. Fifth Avenue, Suite 1210
     Portland, Oregon 97204-1426
22
          Attorney for Plaintiffs
23
     Michael J. Sandmire
24   Nathan A. Karman
     ATER WYNNE LLP
25   222 S.W. Columbia, Suite 1800
     Portland, Oregon 97201-6618
26
          Attorneys for Defendants Reynolds Metals Company &
27        Alcoa, Inc.

28   / / /


1 - OPINION & ORDER

Margaret M. Van Valkenburg
BULLIVANT HOUSER BAILY PC
300 Pioneer Tower
888 S.W. Fifth Avenue
Portland, Oregon 97204-2078

Attorney for Defendant ESIS

HUBEL, Magistrate Judge:

Plaintiffs Estate of Willard Sworden, by and through Personal Representative Scott Sworden ("the Estate"), and Scott Sworden individually, bring this tort action against defendants Reynolds Metals Company, Alcoa, Inc., and ESIS. Plaintiffs bring claims of fraud, deceit, breach of fiduciary duty, statutory wrongful death, common law wrongful death, and a claim under Oregon's Employer Liability Law.[1]

All defendants move for summary judgment on the limited issue of workers' compensation exclusivity. All parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). I grant the motions.

BACKGROUND

Willard Sworden worked at the Reynolds Metals plant in Troutdale from September 1974 to September 2000. Defendant Alcoa

---

[1] The caption of the Complaint suggests that plaintiffs bring a separate claim of civil conspiracy, but there is no such claim actually delineated in the body of the Complaint. This is in accord with Oregon law which does not recognize civil conspiracy as an independent tort. Stringer v. Car Data Sys., Inc., 108 Or. App. 523, 528, 816 P.2d 677, 680 (1991), aff'd, 314 Or. 576, 841 P.2d 1183 (1992). Rather, it is a "theory of mutual agency under which the acts of each of the conspirators are imputed to the other members for purposes of tort liability." Granewich v. Harding, 150 Or. App. 34, 39, 945 P.2d 1067, 1070 (1997), rev'd in part on other grounds, 329 Or. 47, 57, 985 P.2d 788, 794 (1999).

bought the Troutdale Reynolds plant on May 3, 2000.  The purchase was in the form of a merger between Reynolds and a wholly-owned subsidiary of Alcoa named RLM Acquisition Corporation.  The surviving entity of that merger is Reynolds Metals Company, a wholly-owned subsidiary of Alcoa.  From the time of purchase on May 3, 2000, until the Troutdale plant shut down permanently in the fall of 2000, Reynolds continued to operate the plant.

On or about November 6, 2000, Willard Sworden was diagnosed with bladder cancer.  On or about March 5, 2001, Willard Sworden filed a workers' compensation claim for bladder cancer allegedly arising out of his employment at the Troutdale plant, specifically his exposure to coal tar pitch.  The initial workers' compensation claim was filed with "Reynolds Metal Co." listed as the employer.  Exh. A to Nov. 17, 2004 Van Valkenberg Affid.

On April 24, 2001, ESIS, the third-party administrator for the claim, denied Willard Sworden's claim on the basis of insufficient evidence that his employment was the "major contributing cause" of his claimed condition.  The denial letter identifies the "Client/Account" as "Reynolds Metals."  Exh. B to Nov. 17, 2004 Van Valkenberg Affid.  The letter also states that . . . there is insufficient medical evidence that your employment with Reynolds Metals is the major contributing cause of your claimed condition, bladder cancer."  Id.

On June 19, 2001, Willard Sworden appealed the claim denial, challenging the denial of the compensability of the claim and asserting that the claim should have been accepted.  In the Request for Hearing, the employer is identified as "Reynolds Metals."  Exh. C to Nov. 17, 2004 Van Valkenberg Affid.

3 - OPINION & ORDER

A hearing on certain discovery issues involved in the appeal was conducted on September 18, 2001, by Administrative Law Judge (ALJ) Darren Otto. At the hearing, Willard Sworden contended that the major contributing cause of his cancer was workplace exposure to coal tar pitch. ALJ Otto continued the hearing to allow the parties to engage in discovery.

During the hearing, an issue was raised regarding whether Willard Sworden had to file a separate claim against Alcoa. Excerpts from that hearing show that the parties to the workers' compensation proceeding agreed to treat the claim against Reynolds as a claim against Alcoa and the April 24, 2001 denial of the claim as having come from both entities, obviating the need for Willard Sworden to file a separate claim against Alcoa. Exh. A to Mar. 7, 2005 Frost Affid. at pp. 2-4; Exh. 8 to Apr. 1, 2005 Karman Declr.

Discovery in the claim was in progress when Willard Sworden died of bladder cancer on May 27, 2002.

In August 2002, Evohl Malagon, an attorney representing Linda Cato, a woman claiming to be Willard Sworden's common-law wife, made a claim for widow's benefits. ESIS questioned Cato's right to receive widow's benefits. Cato's claim was joined in the same proceeding as Willard Sworden's appeal of the denial of his claim.

On November 26, 2002, ESIS issued a Notice of Acceptance of Willard Sworden's workers' compensation claim.

On January 13, 2003, ESIS paid $18,288.76 to Kaiser Permanente for Willard Sworden's medical costs and also issued a check to Cato for $4,825 for reimbursement of Willard Sworden's funeral expenses.

On January 20, 2003, plaintiffs' counsel Peter Hansen filed a "Supplemental Request for Hearing," on behalf of the Estate, asking

4 - OPINION & ORDER

that the November 2002 acceptance of Willard Sworden's claim be set aside.  Cato did not join in this request.

On February 27, 2003, ALJ Otto dismissed the Estate from the workers' compensation proceeding because the estate of a deceased worker is not entitled to pursue a claim in the event the claimant dies before the final disposition of the claimant's hearing request.  ALJ Otto also concluded that Cato was not entitled to widow's benefits because she did not have a living child under the age of eighteen as a result of her relationship with Willard Sworden.

The Workers' Compensation Board upheld the ALJ's rulings. Both the Estate and Cato have appealed the Board's rulings to the Oregon Court of Appeals.  The appeals are pending.  Plaintiff initiated the action in this Court on July 30, 2004.

STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'"  Intel Corp. v.

Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 630-31.

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Id.; In re Agricultural Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990); California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

DISCUSSION

The backdrop for this case is a 2001 Oregon Supreme Court case involving the constitutionality of the workers' compensation exclusivity provision as it applies to denials of occupational disease claims. In Smothers v. Gresham Transfer, Inc., 332 Or. 83, 23 P.3d 333 (2001), the plaintiff filed a workers' compensation claim for a lung condition that he contended was caused by his exposure at the workplace to certain chemicals used in a trucking

6 - OPINION & ORDER

company's truck washing service. The defendant's insurer denied the claim. At a hearing before an ALJ, the issue was whether the plaintiff had a compensable occupational disease. The ALJ upheld the insurer's denial because, the ALJ concluded, the plaintiff had failed to prove that his work exposure was the major contributing cause of his lung disorder. Thereafter, the Workers' Compensation Board affirmed the ALJ's decision. The Oregon Court of Appeals affirmed the Board without opinion.

The plaintiff then filed a civil negligence action against the employer. The trial court dismissed the complaint for failure to state a claim, reasoning that Oregon Revised Statute § (O.R.S.) 656.018 made workers' compensation law the exclusive remedy for work-related injuries, whether or not a claim is compensable. The Oregon Court of Appeals affirmed. The plaintiff appealed to the Oregon Supreme Court, arguing that he had been denied a remedy for the injuries that he suffered at work in violation of the remedy clause in Article I, section 10 of the Oregon Constitution.

On appeal, the plaintiff argued that while he could not prove that the acid fumes and mist to which he was subjected at his workplace were "the major contributing cause" of his lung condition, he nonetheless had been injured at work, the fumes and mist were a cause of that injury, and that the amendments to O.R.S. 656.018, making the compensation statutes his exclusive remedy regardless of the compensability of the claim, left him with no remedy for the injuries he had suffered at work in violation of Article I, section 10's remedy clause.

The lengthy Supreme Court opinion starts by tracing the history of remedy clauses in state constitutions and then proceeds

7 - OPINION & ORDER

to examine Oregon's remedy clause and prior Oregon Supreme Court cases interpreting the clause. In setting forth the appropriate analysis for remedy clause claims in general, the court stated:

> It follows from the foregoing that, in analyzing a claim under the remedy clause, the first question is whether the plaintiff has alleged an injury to one of the absolute rights that Article I, section 10 protects. Stated differently, when the drafters wrote the Oregon Constitution in 1857, did the common law of Oregon recognize a cause of action for the alleged injury? If the answer to that question is yes, and if the legislature has abolished the common-law cause of action for injury to rights that are protected by the remedy clause, then the second question is whether it has provided a constitutionally adequate substitute remedy for the common-law cause of action for that injury.

Id. at 124; 23 P.3d at 356-57.

The court then turned to the analysis of the facts in Smothers. The court stated that its first task was to determine whether the plaintiff had alleged an injury to one of the rights for which the remedy clause mandates that a remedy be available by due course of law. Id. at 128; 23 P.3d at 359. The court concluded that "in 1857, the common law of Oregon would have recognized that a worker had a cause of action for negligence against his employer for failing to provide a safe workplace and failing to warn of the dangerous conditions to which the worker would be exposed at work." Id. at 131; 23 P.3d at 360. T h e next question was whether there was a remedial process available to the plaintiff for seeking redress for the injuries that he alleges that he suffered. Id. The court noted that the "major contributing cause" standard used in Oregon workers' compensation claims for occupational diseases, did not exist at common law. Id. at 134; 23 P.3d at 361.

Thus, for those workers' compensation claims that are

8 - OPINION & ORDER

subject to the major contributing cause standard, [i.e. occupational diseases], workers' compensation law does not provide compensation for a work-related incident that was only a contributing cause of the worker's injury. Therefore, workers' compensation law no longer provides a remedy for some wrongs or harms occurring in the workplace for which a common-law negligence cause of action had existed when the drafters wrote the Oregon Constitution in 1857.

Id.

In summarizing its holding, the court stated:

Based on our analysis of the remedy clause of Article I, section 10, we conclude that determining whether the exclusive remedy provisions of ORS 656.018 (1995) violate that clause involves a case-by-case analysis. The first inquiry is whether a workers' compensation claim alleges an injury to an "absolute" common-law right that the remedy clause protects. If it does, and the claim is accepted and the worker receives the benefits provided by the workers' compensation statutes, then the worker cannot complain that he or she has been deprived of a remedial process for seeking redress for injury to a right that the remedy clause protects. Neither can the worker complain that he or she has been deprived of a remedial process if a compensation claim is denied because the worker is unable to prove that the work-related incident was a contributing cause of the alleged injury, which is what a plaintiff would have had to prove in a common-law cause of action for negligence. However, if a workers' compensation claim for an alleged injury to a right that is protected by the remedy clause is denied because the worker has failed to prove that the work-related incident was the major, rather than merely a contributing, cause of the injury, then the exclusive remedy provisions of ORS 656.018 (1995) are unconstitutional under the remedy clause, because they leave the worker with no process through which to seek redress for an injury for which a cause of action existed at common law.

Id. at 135; 23 P.3d at 362.

Following Smothers, the Oregon Legislature adopted O.R.S. 656.019(1)(a) which codifies Smothers. The statute provides that

[a]n injured worker may pursue a civil negligence action for a work-related injury that has been determined to be not compensable because the worker has failed to establish that a work-related incident was the major contributing cause of the worker's injury only after an order determining that the claim is not compensable has

9 - OPINION & ORDER

become final. The injured worker may appeal the compensability of the claim as provided in ORS 656.298, but may not pursue a civil negligence claim against the employer until the order affirming the denial has become final.

O.R.S. 656.019(1)(a).

To come within the exception to the workers' compensation exclusive remedy provision articulated in <u>Smothers</u>, and thus, to be able to proceed with tort claims typically precluded by that exclusivity remedy provision, a plaintiff must show that he or she has been denied the statutory remedy which the Legislature has substituted for the common law remedy and that such denial violates the claimant's constitutional rights under the Oregon Constitution. Here, plaintiffs first argue that the November 2002 acceptance of Willard Sworden's workers' compensation claim following its initial denial was wrongful and should be set aside. Following that, plaintiffs contend that a denial of the statutory remedy in Willard Sworden's case violates Oregon's remedy clause.

I do not discuss plaintiffs' arguments regarding the propriety of the acceptance of the compensation claim. I conclude that even if the acceptance were somehow wrongful and even if Willard Sworden's claim should have been denied, and assuming that plaintiffs could obtain a final order of denial of the claim, plaintiffs still cannot proceed with the claims asserted here because the claims were not recognized at common law in 1857 and thus, the remedy clause does not guarantee a civil action remedy for such claims. Plaintiffs do not bring a claim for negligently inflicted injury by the employer as in <u>Smothers</u>.

/ / /

/ / /

10 - OPINION & ORDER

I.  General Principles of Workers' Compensation Exclusivity
    and Its Application to the Claims and Parties in this
    Case

    A.  General Principles

    O.R.S. 656.018 provides, in pertinent part:

    (1)(a) The liability of every employer who satisfies the
    duty required by ORS 656.017(1) is exclusive and in place
    of all other liability arising out of injuries, diseases,
    symptom complexes or similar conditions arising out of
    and in the course of employment that are sustained by
    subject workers, the workers' beneficiaries and anyone
    otherwise entitled to recover damages from the employer
    on account of such conditions or claims resulting
    therefrom, specifically including claims for contribution
    or indemnity asserted by third persons from whom damages
    are sought on account of such conditions, except as
    specifically provided otherwise in this chapter.

    . . .

    (2) The rights given to a subject worker and the
    beneficiaries of the subject worker under this chapter
    for injuries, disease, symptom complexes or similar
    conditions arising out of and in the course of employment
    are in lieu of any remedies they might otherwise have for
    such injuries, diseases, symptom complexes or similar
    conditions against the worker's employer under ORS
    654.305 to 654.336 or other laws, common law or statute,
    except to the extent the worker is expressly given the
    right under this chapter to bring suit against the
    employer of the worker for an injury, disease, symptom
    complex or similar condition.

    (3) The exemption from liability given an employer under
    this section is also extended to the employer's insurer
    [.] . . .

    . . .

    (7) The exclusive remedy provisions and limitation on
    liability provisions of this chapter apply to all
    injuries and to diseases, symptom complexes or similar
    conditions of subject workers arising out of and in the
    course of employment whether or not they are determined
    to be compensable under this chapter.

O.R.S. 656.018.

    Generally, "[w]hen the Workers' Compensation Law provides the

basis for a compensable injury claim, then that remedy is exclusive

11 - OPINION & ORDER

and the worker cannot seek a tort remedy instead." _Panpat v. Owens-Brockway Glass Container, Inc._, 334 Or. 342, 348, 49 P.3d 773, 776 (2002). "Conversely, if the injury did not arise out of and in the course of employment, then the exclusivity provision of the Workers' Compensation Law is not a bar to a civil action against an employer for personal injuries." _Id._

> Workers who are injured in the course and scope of employment are entitled to receive certain benefits from their employers, and, with some notable exceptions, those benefits are exclusive of all other remedies that would otherwise be available to the worker. . . . The workers' compensation scheme involves a _quid pro quo_, in which the employer gives up the right to defend against certain actions involving workplace injuries, while receiving the benefit of a limit on potential damages. Conversely, the employee is compensated for injuries regardless of whether the employer would be liable in tort, while giving up the right to pursue other statutory or common-law remedies.

_Hanson v. Versarail Sys, Inc._, 175 Or. App. 92, 95-96, 28 P.3d 626, 627 (2001) (citations omitted).

The exclusivity provision applies regardless of whether the injury is ultimately compensable. O.R.S. 656.018(7); _Smothers_, 332 Or. at 88, 23 P.3d at 337 (noting legislative amendment to provide that workers' compensation is the exclusive remedy for work-related injuries, even if a claim is not compensable).

B. Parties

Under the plain statutory language, employers and workers' compensation insurance carriers are protected by the exclusivity provision. Thus, all defendants may rely on the provision.[2]

Exclusivity expressly applies to "workers' beneficiaries and

---

[2] Plaintiffs' separate argument regarding whether Alcoa is an employer is addressed below.

12 - OPINION & ORDER

anyone else otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom." O.R.S. 656.018(1)(a). Moreover, Oregon courts have applied the exclusive remedy provision to bar claims brought by the family and the estate of an injured worker. See Kilminster v. Day Mgmt Corp., 323 Or. 618, 623-28, 919 P.2d 474, 477-79 (1996) (exclusivity provision applied to bar estate of decedent worker from pursuing statutory negligent wrongful death claim because decedent would have had no claim and statute only conferred derivative rights); Rangel v. Denton Plastics, Inc., 148 Or. App. 328, 335, 939 P.2d 644, 647 (1997) (after determining that the plaintiffs could not sustain their claim that the employer deliberately intended to injure the employee, court affirmed trial court's holding that exclusivity provision barred claims brought by decedent's parents and his estate).

The exclusivity provision applies as well even when the specific plaintiff in the civil action receives no benefits or recovery under the workers' compensation system as a result of the worker's death. In Leech v. Georgia-Pacific Corp., 259 Or. 161, 485 P.2d 1195 (1971), the disabled daughter of a deceased worker brought an action against her father's employer for damages resulting from the father's death in an industrial accident. As an adult child of the deceased worker, the daughter did not qualify, under the workers' compensation statutes in effect at that time, to receive any workers' compensation benefits directly.[3]

The daughter sued for negligence in a civil action. In

---

[3] The statute has since been amended.

13 - OPINION & ORDER

response to the defendant's workers' compensation exclusivity argument, the daughter argued that the exclusivity provision should not apply to her because no statutory workers' compensation benefits were provided on her account. She contended that a dependent who receives no compensation benefits should not be barred from bringing a negligence action.

The Supreme Court disagreed. It first noted that the plain language of the statute "indicates . . . that the legislature intended the remedy provided by [workers'] compensation to be exclusive and that complying employers are not subject to negligence actions by persons omitted from the compensation benefit schedules." 259 Or. at 166, 485 P.2d at 1197.

Second, the court upheld the constitutionality of the exclusivity provision in the face of the plaintiff's equal protection/"palpably arbitrary" argument. Id. at 167-70, 485 P.2d at 1198-99. The court noted that the "legislature is not constitutionally required to enact laws which operate to solve perfectly every aspect of the problem to which they are directed." Id. at 167, 485 P.2d at 1198. The legislature's decision to provide workers' compensation benefits to certain classes of people, and not to others who may have been dependent on the worker, did not render the exclusivity provision unconstitutional. Id. at 168-67, 485 P.2d at 1198-99.[4]

Defendants may properly assert the exclusivity provision and,

---

[4] The court expressly declined to address the argument that the exclusivity provision as applied to the plaintiff in that case violated Article I, section 10's remedy provision. 259 Or. at 167 n.3; 485 P.3d at 1198 n.3.

14 - OPINION & ORDER

subject to plaintiffs' constitutional argument discussed below, the exclusivity provision applies to both the Estate and to Scott Sworden to bar them from pursuing the civil tort claims in this case.

C. Claims

As noted above, the claims asserted in this case are statutory wrongful death, common law wrongful death, breach of fiduciary duty, fraud, and a claim under the statutory Employer's Liability Law (ELL).

Both wrongful death claims and the ELL claim are asserted against Reynolds and Alcoa[5]. The allegations in support of these claims at paragraphs 1-6, 17-25 of the Complaint, make clear that these claims are exactly the types of claims to which the exclusivity of the workers' compensation system applies. Plaintiffs contend that these causes of action arise out of Willard Sworden's alleged workplace exposure to coal tar pitch which led to his bladder cancer and eventual death. Thus, they are barred by O.R.S. 656.018(1)(a).

Defendants argue that the exclusivity provision applies to the other claims as well because they concern the handling of a claim. Defendants correctly note that the "arising out of" language extends to the alleged failure to "provide adequate compensation."

---

[5] The ELL and statutory wrongful death claims are expressly asserted against only Reynolds and Alcoa. The common law wrongful death claim is not so limited, but it incorporates the allegations made in support of the ELL and statutory wrongful death claims asserted against only those two defendants. Moreover, the nature of the claim indicates that as with the statutory wrongful death and the ELL claims, it can be asserted only against the employer, not the insurance carrier ESIS.

<u>Nicholson v. Blachly</u>, 86 Or. App. 645, 649, 740 P.2d 220, 222, <u>rev'd on other grounds</u>, 305 Or. 578, 753 P.2d 955 (1988).

Two other cases are relevant to the issue of whether the fraud and breach of fiduciary duty claims are barred by the exclusivity provision. First, in <u>Gordineer v. Bellotti</u>, 100 Or. App. 102, 785 P.2d 362 (1990), the plaintiff alleged that his employer had furnished false and perjured testimony and evidence in a workers' compensation hearing at which an overpayment claim was at issue and that, as a result, he suffered a loss of temporary total disability benefits to which he alleged that he was entitled.

The court rejected the plaintiff's argument that the wrongs alleged in his action did not arise out of his compensable injury but, rather, were post-injury intentional torts for which he could bring a civil action. <u>Id.</u> at 105, 785 P.2d at 363. Rather, the court explained, plaintiff stated the issue "too narrowly." The question "is not whether the wrongs arose out of his compensable injury or were post-injury, but whether they were matters 'concerning a claim,' for which the decision and review provisions of workers' compensation law are exclusive." <u>Id.</u> at 105-06, 785 P.2d at 363-64.

Given the plaintiff's allegations, the court concluded that the plaintiff alleged "damages that arose directly out of a workers' compensation proceeding in which the amount of compensation was in issue." <u>Id.</u> at 106, 785 P.2d at 364. The court further noted that adding a claim

> for general and punitive damages in addition to a claim
> for loss of compensation does not alter the nature of his
> cause of action. He seeks to overturn a workers'
> compensation decision, and the trial court was correct in
> holding that the remedies in the workers' compensation

law are exclusive.
Id. at 106-07, 785 P.2d at 364.

The Gordineer court distinguished the other relevant case, Crosby v. SAIF, 73 Or. App. 372, 699 P.2d 198 (1985). There, the plaintiff alleged that the defendants had conspired to divest him unlawfully of his right to workers' compensation benefits and to terminate him unlawfully. Specifically, the plaintiff alleged that after his on-the-job injury, his employer and SAIF, the employer's workers' compensation insurer, met and agreed that (1) the employer would create a light duty job for the plaintiff so that workers' compensation benefits would no longer be payable to the plaintiff, and (2) that after the plaintiff started his employment in the light duty position, he would be discharged from his employment. Id. at 373, 699 P.2d at 199. The plaintiff brought three claims: civil conspiracy, intentional interference with contract against SAIF, and intentional infliction of emotional distress.

The trial court dismissed the claims against the employer on the basis that the plaintiff's sole remedy was under O.R.S. Chapter 659, the discrimination laws. The Court of Appeals reversed. The appellate court first noted that under Holien v. Sears, Roebuck & Co., 298 Or. 76, 689 P.2d 1292 (1984), the plaintiff was not precluded from bringing a common law tort claim because of the existence of remedies under O.R.S. Chapter 659. Id. at 374, 699 P.2d at 200.

Next, the court rejected the argument that plaintiff's claim was limited to one for unlawful termination for having filed a workers' compensation claim under O.R.S. 659.410. Rather, the court explained, the plaintiff did not plead that he was terminated

17 - OPINION & ORDER

because he filed a claim. He alleged that defendants conspired to divest him unlawfully of his right to workers' compensation benefits and to terminate him. Id. at 375, 699 P.2d at 200.

As the Gordineer court noted, there was no issue in Crosby about the exclusivity of the workers' compensation law. Gordineer, 100 Or. App. at 106, 785 P.2d at 364. The Gordineer court explained that "SAIF's contention (which we rejected) was that, because the plaintiff's allegations arose out of his termination after he had filed a workers' compensation claim, the remedies for discrimination under ORS chapter 659 were exclusive. More fundamentally, the misconduct alleged in Crosby had nothing to do with the disposition of the plaintiff's compensation claim." Id.

Here, the relevant allegations in the Complaint are that defendants or their agents developed a scheme which would deny damages or compensation for Willard Sworden's bladder cancer and eventual death to Willard Sworden's decedent and his estate. Compl. at ¶ 10. Under this alleged scheme to deny Willard Sworden workers' compensation benefits and then to deny his estate the right to bring a civil action for damages, defendant ESIS accepted Willard Sworden's compensation claim after he died. Id. The entering of the notice of claim acceptance was allegedly done for the unlawful purpose of denying Willard Sworden and plaintiffs an adequate remedy for his death from bladder cancer. Id. Defendants have allegedly intentionally and knowingly entered a false notice of claim acceptance to the Estate misrepresenting the Estate's entitlement to workers' compensation benefits under the law and intending that the Estate and the Workers' Compensation Board would rely upon that misrepresentation. Id. at ¶ 15.

Based on these allegations, I agree with defendants that the fraud and breach of fiduciary duty claims concern the processing of Willard Sworden's workers' compensation claim because the tort claims are based on the allegation that the acceptance of the claim after his death was wrongful. This is a direct challenge to the processing of the claim. Thus, I agree with defendants that under Gordineer, the claims are subject to the exclusivity provision.

Plaintiffs argue that the court should rely on Crosby and the exception to workers' compensation exclusivity for intentional acts. I reject plaintiffs' reliance on Crosby. This case is controlled by Gordineer, not Crosby.

In Crosby, there was no question that the plaintiff was entitled to workers' compensation for his injury. The tort claims asserted in the civil action did not relate to the handling of the claim but rather, to the post-claim alleged agreement between the defendants to allegedly deprive the plaintiff of his compensation by means other than processing the claim. Here, in contrast, the basis of plaintiffs' fraud and breach of fiduciary duty claims is that defendants initially conspired to wrongfully deny Willard Sworden's claim while he was alive and then conspired to wrongfully accept the claim after he died. The only way to characterize these claims is that they have everything to do with the disposition of Willard Sworden's workers' compensation claim. Crosby is not controlling.

Next, O.R.S. 656.156(2) creates an exception to the exclusivity provision for certain intentional acts by the employer:

> If injury or death results to a worker from the deliberate intention of the employer of the worker to produce such injury or death, the worker, the widow,

19 - OPINION & ORDER

widower, child or dependent of the worker may take under this chapter, and also have cause for action against the employer, as if such statutes had not been passed, for damages over the amount payable under those statutes.

O.R.S. 656.156(2).

Plaintiffs overstate the exemption from the exclusivity provision. It does not apply to all "intentional torts," but only to those injuries or deaths resulting from the deliberate intent to cause the injury or death. See Kilminster, 323 Or. at 631, 919 P.2d at 481 ("deliberate intent" requires the worker to show that the employer had the specific intent to injure the employee); see also Hanson, 175 Or. App. at 97-100, 28 P.3d at 628-30 (plaintiff could not rely on doctrine of respondeat superior to bring a battery claim against the employer under O.R.S. 656.156(2) because the employer did not intend to injure the plaintiff).

In this case, the fraud and breach of fiduciary duty claims do not allege that defendants intentionally caused Willard Sworden's bladder cancer and death. Rather, the allegations of intentional conduct relate to the processing of Willard Sworden's workers' compensation claim. This is the same type of allegation that the court in Gordineer held was covered by the exclusivity provision where the court rejected the plaintiff's argument that his post-injury intentional tort claims regarding the employer's alleged false and perjured testimony were "intentional torts" for which he could bring a civil action. Rather, as discussed above, because the civil claims were matters concerning the handling of the workers' compensation claim, O.R.S. 656.018 applied.

The workers' compensation exclusivity provision in O.R.S.

20 - OPINION & ORDER

656.018 applies to all of the claims asserted in this case.[6]

II.   Oregon Constitution - Remedies Provision

Article I of the Oregon Constitution is Oregon's Bill of Rights.   Smothers, 332 Or. at 91, 23 P.3d at 338.   Section 10 provides:

> No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation.

Or. Const. Art. I, sec. 10.

As explained in Smothers, the phrase "every man" means every person and

> [u]nlike many provisions in bills of rights, which protect individual rights by prohibiting the legislature from enacting certain laws or prohibiting the government from taking certain actions, the second clause of section 10 protects rights respecting person, property, and reputation by mandating affirmatively that remedy by due course of law be available in the event of injury to those rights.

Smothers, 332 Or. at 92, 23 P.3d at 339.

As explained earlier in this Opinion, Smothers sets forth the following remedy clause analysis:

> in analyzing a claim under the remedy clause, the first question is whether the plaintiff has alleged an injury

_____

[6]   Interestingly, even plaintiffs seem to recognize the validity of this conclusion.  Defendants note that in the pending appeals before the Oregon Court of Appeals by petitioners Cato and the Estate, the petitioners argue that "[w]hether the employer inappropriately accepted the claim is an issue regarding a right to receive compensation . . . [and is] squarely [a] matter[] concerning a claim."  Exh. 1 to Apr. 1, 2005 Karman Declr. at p. 4.   The petitioners further assert that the "workers' compensation forum is the only place to litigate 'matters concerning a claim[]' [and] that the Hearings Division is the only forum for the estate's claims of employer impropriety."  Id. at pp. 4-5.

21 - OPINION & ORDER

to one of the absolute rights that Article I, section 10
protects.  Stated differently, when the drafters wrote
the Oregon Constitution in 1857, did the common law of
Oregon recognize a cause of action for the alleged
injury?  If the answer to that question is yes, and if
the legislature has abolished the common-law cause of
action for injury to rights that are protected by the
remedy clause, then the second question is whether it has
provided a constitutionally adequate substitute remedy
for the common-law cause of action for that injury.

Id. at 124, 23 P.3d at 356-57.

Remedy clause cases after Smothers have adhered to the
Smothers analysis.  E.g., Jensen v. Whitlow, 334 Or. 412, 417-18,
51 P.3d 599, 601-02 (2002) (following methodology adopted in
Smothers); Lawson v. Hoke, 190 Or. App. 92, 95-96, 77 P.3d 1160,
1162-63 (2003) (same), rev. allowed, 336 Or. 509, 87 P.3d 1136
(2004).  Under Smothers, the first question in the analysis is
whether the common law of Oregon recognized a cause of action for
the alleged injuries in 1857.

A.  Statutory Causes of Action

As explained in Smothers, the remedy clause protects "a wrong
or harm for which a cause of action existed when the drafters wrote
the Oregon Constitution in 1857."  Smothers, 332 Or. at 124, 23
P.3d at 356; see also Storm v. McClung, 334 Or. 210, 221-23, 47
P.3d 476, 481-82 (2002) (noting that Smothers made clear that the
purpose of Article I, section 10 was to protect absolute "common
law" rights and to the extent earlier cases had suggested that
Article I, section 10 protected any recognized cause of action
regardless of whether it existed at common law or was legislatively
created, those cases were in error).

It is clear that the protection extends only to common law
causes of action.  Thus, plaintiffs' statutory wrongful death and

22 - OPINION & ORDER

ELL claims, which are based only on Oregon statutes and not Oregon common law, are not protected by Article I, section 10's guarantee of a remedy.  Accordingly, regardless of whether the acceptance of the workers' compensation claim was somehow wrongful, even if plaintiffs had a final order of a denial of that claim, they would be unable to successfully argue that the exclusivity provision of the workers' compensation statutes violates their rights under Article I, section 10.

B.   Common-law Wrongful Death Claim

Plaintiffs contend that as to their common law claim for wrongful death, I should certify the question of whether Oregon recognizes such a claim to the Oregon Supreme Court.  There are several problems with this request.

First, as defendants note, certification of questions from a federal court to the Oregon Supreme Court is governed by O.R.S. 28.200 - O.R.S. 28.255.  A federal court may certify a question

> if there are involved in any proceedings before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme court and the intermediate appellate courts of this state.

O.R.S. 28.200.

Under this Court's Local Rule 83.15(a), this Court applies the criteria for certification set forth in Western Helicopter Services, Inc. v. Rogerson Aircraft Corp., 311 Or. 361, 811 P.2d 627 (1991).  The rule requires the party seeking certification is required to file and serve a motion with a supporting memorandum that complies with the Western Helicopter case. One of the Western Helicopter criteria is that "it must appear to the certifying court

23 - OPINION & ORDER

that there is no controlling precedent in the decisions of [the Oregon Supreme Court] or the Oregon Court of Appeals." Western Helicopter, 311 Or. at 365, 811 P.2d at 630.

Plaintiffs have not met the procedural criteria set forth in L.R. 83.15 because they have not filed a motion seeking certification or analyzing the factors set forth in Western Helicopter.

More importantly, even if plaintiffs had complied with the procedural prerequisites, I would decline to endorse certification because there is controlling precedent in the Oregon courts. Plaintiffs rely on Storm for the proposition that the Oregon Supreme Court has acknowledged that Oregon may indeed recognize an action for common law wrongful death, but that the question has not been answered because it has not been directly presented to the Oregon Supreme Court. I disagree with plaintiffs.

Oregon appellate courts have held on numerous occasions that there is no action for wrongful death at common law in Oregon and that wrongful death exists only as a statutory cause of action. E.g., Smothers, 332 Or. at 128, 23 P.3d at 358 ("Oregon has no common-law action for wrongful death"); Kilminster, 323 Or. at 627, 929 P.2d at 479 (noting that because Oregon has no common law action for wrongful death, the plaintiffs suffered no legally cognizable injury to their person, property, or reputation); Griest v. Phillips, 322 Or. 281, 294, 906 P.2d 789, 797 (1995) (noting that the right of action for wrongful death in Oregon is statutory and "at common law no remedy by way of a civil action for wrongful death existed[.]") (internal quotation omitted).

Despite these statements in the multiple Oregon Supreme Court

opinions, plaintiffs rely on the following language from Storm to

argue that the existence of a common-law wrongful death claim is

actually undecided in Oregon and thus, provides the basis for

certification of the issue by this court to the Oregon Supreme

Court:

> Plaintiff's counsel has presented this court with
> research that counsel contends establishes that a common-
> law action for wrongful death is legally cognizable in
> Oregon's courts and that the Oregon courts should have
> acknowledged a common-law action for wrongful death since
> Oregon's statehood. FN4   That question, however, is
> beside the point in this case.

> FN4 This court previously has been apprised of the
> questionable premise underlying the widely held
> view that there was no common-law action for
> wrongful death.   The court acknowledged as much
> when it addressed the history of wrongful death
> actions in Oregon in Goheen v. General Motors
> Corp., 263 Or. 145, 150-51, 502 P.2d 223 (1972).
> In Goheen, the court first pointed out Prosser's
> criticism of Baker v. Bolton, 1 Camp 493, 170 Eng
> Rep 1033 (nisi Prius 1808), the first case to
> declare that no civil right of action damages for
> the death of another could stand:

> "* * * Lord Ellenborough, whose forte was never
> common sense, held without citing any authority
> that a husband had no action for loss of his wife's
> services through her death, and declared in broad
> terms that "in a civil court the death of a human
> being could not complained of as an injury."

> Goheen, 263 Or. at 150-51, 502 P.2d 223.

> The court then observed:

> "Meanwhile, the American courts allowed recovery
> for wrongful death.   In 1848, however, the
> Massachusetts Supreme Court in Carey v. Berkshire
> R.R. Co. [55 Mass. 475 (1848)], ignored earlier
> decisions by American courts to the contrary and
> cited and adopted the rule as stated in Baker v.
> Bolton.  Since then most American courts, including
> this court, have adopted the rule holding that
> there is no common law cause of action for wrongful
> death.

> Id. at 151, 502 P.2d 223 (footnotes omitted).

25 - OPINION & ORDER

> To compensate for the lack of a common-law right of
> action for wrongful death, Lord Campbell's Act was
> adopted in England, and the states followed suit by
> adopting similar statutes. Id. at 153, 502 P.2d
> 223. The original Oregon Wrongful Death Act was
> included in the original Deady Code of 1862. Since
> at least 1891, this court has adhered to the view
> that no right of action for wrongful death existed
> at common law.

334 Or. at 222 & n.4, 47 P.3d at 482 & n.4 (brackets in Storm).

This dicta discussion by the Oregon Supreme Court in Storm shows that the court is well aware of the argument that its years of holding that there is no common-law cause of action for wrongful death in Oregon may be unsupportable but that, in fact, the court has chosen to adhere to that holding. This discussion does not, contrary to plaintiff's assertion, show that the Oregon Supreme Court has declined to address the issue because it has not been directly before the court. While there was no common-law cause of action at issue in Storm, the court did not suggest that it might change its holding of more than a century if the question were "directly presented."

During oral argument, plaintiffs noted that at present, there were cases pending in the Oregon courts raising the issue of the viability of a common law wrongful death claim under Oregon law. In a post-argument memorandum of law, plaintiffs cite to two such cases, one apparently pending before the Oregon Court of Appeals, with oral argument having occurred in March 2005, and the other in which a petition for review has been filed with the Oregon Supreme Court. Pltfs' Mem. on Or. Common Law at p. 3. Plaintiffs also cite to a case of Judge King's in which Judge King declined to conclude that Oregon recognized a common law wrongful death action and further declined to certify related questions to the Oregon

26 - OPINION & ORDER

Supreme Court.  Id.  Plaintiffs indicate that an appeal of Judge King's case is pending before the Ninth Circuit.  Id.  Plaintiffs also suggest that the issue may be raised in a pending motion to dismiss before Judge Ashmanskas.  Id.

The problem with plaintiffs' reliance on all of these cases is that none of them is a decision from an Oregon court suggesting that its controlling law regarding common law wrongful death claims, is in doubt.  Plaintiffs simply cite to cases where the argument is being made.  None of the authorities cited provide a foundation for certification.

I decline to grant plaintiffs' request for certification. Following controlling Oregon law, I conclude there is no common law wrongful death claim in Oregon.  As such, the workers' compensation exclusive remedy provision does not unconstitutionally deprive plaintiffs of a remedy for such a claim.

C.  Breach of Fiduciary Duty & Fraud Claims[7]

Under the Smothers analysis, the question is whether these claims were recognized as common law actions at the time the Oregon Constitution was adopted.  Language in Smothers suggests that a specific inquiry is required.  It is not enough to ask whether a claim was generally recognized as a common law action in 1857. Smothers, 332 Or. at 129, 23 P.3d at 359 (after noting that the common law recognized a cause of action for negligence in 1857, the court then went on to state that its "next, more specific inquiry is whether at common law in Oregon in 1857, an employee would have

---

[7] Based on the authority cited in footnote one, I do not address the civil conspiracy allegations as a separate claim.

27 - OPINION & ORDER

had a cause of action against an employer for failure to provide a safe workplace and failure to warn of dangerous working conditions to which the employee would be exposed.").

However, it is also important to note that the existence, in 1857, of the precise factual scenario presented by the present claim, is not mandatory. In <u>Lawson</u>, the issue was whether the remedy clause protected a common law negligence action for injuries suffered in an automobile accident when automobiles did not exist in 1857. <u>Lawson</u>, 190 Or. App. at 97, 77 P.3d at 1163. The Oregon Court of Appeals noted that "[t]he [Oregon] Supreme Court has never stated how closely a cause of action must resemble one that existed in 1857 in order to be sheltered by Article I, section 10." <u>Id.</u>

The court was guided by Oregon Supreme Court cases construing other provisions in Oregon's Bill of Rights, including Article I, section 17's right to a jury trial. <u>Id.</u> In that context the Oregon Supreme Court has held that the right of jury trial was not limited strictly to those cases in existence before the adoption of the Oregon Constitution but that the right extended to "cases of like nature." <u>Id.</u> (internal quotation omitted).

Based on these and other cases under the free speech provision in Article I, section 8, the <u>Lawson</u> court reasoned that:

> Article I, section 8, and Article I, section 17--like Article I, section 10--are original constitutional guarantees contained in the Oregon Bill of Rights. There is no reason to believe that the remedy clause does not, in like manner, safeguard "extensions" that remain true to its "initial principle." We conclude that that is the case here. Article I, section 10, protects claims for negligence that are equivalent in substance--though modern in form--to those that existed at common law in 1857.

<u>Id.</u> at 98, 77 P.3d at 1164.

28 - OPINION & ORDER

The basis of plaintiffs' breach of fiduciary duty and fraud claims is that defendants conspired to deprive plaintiffs of their right to bring a common law negligence claim against defendants under Smothers.  More particularly, plaintiffs contend that defendants accepted Willard Sworden's workers' compensation claim without sufficient evidence of major contributing cause, thereby preventing plaintiffs from bringing a civil action in court pursuant to Smothers.

In terms of the fraud claim, the elements of the claim would be that defendants, knowing that there was insufficient evidence of major contributing cause (or that the evidence of major contributing cause was false), represented to plaintiffs that there was evidence of major contributing cause, plaintiffs relied on that representation to their detriment, and plaintiffs were harmed by the false representation.  Oregon common law recognized a claim for fraud in 1857.  See Smallwood v. Fisk, 146 Or. App. 695, 702-03, 934 P.2d 557, 561 (1997) (discussing history of Oregon fraud claims and referring to recovery of damages for a civil action for fraud in 1864).  Under Smothers, that general inquiry is insufficient. Obviously, the precise factual scenario presented by the fraud claim did not exist in 1857 because there was no workers' compensation system at that time and no requirement for proof of major contributing cause; there clearly was no claim for wrongly accepting a workers' compensation claim at the time of the adoption of the Oregon Constitution.

Following the analysis in Lawson, the inquiry is whether the fraud claim is an extension of a common law fraud claim apparent in 1857 or is a claim of like nature.  The analogous claim in 1857

29 - OPINION & ORDER

would be that an employer falsely admitted its negligence in the face of a negligence claim by an employee for the employee's work-related injury or disease. I conclude that no such fraud claim existed at common law in 1857. No claim for fraud could be based on an allegedly false admission that the employer was a contributing cause of an employee's injury. The only "damage" from such an admission would have been to deprive the employee of a determination of liability by a jury. Negligence defendants have always been free to admit liability and dispute damages only. This is not a sufficient basis for a fraud claim and such a claim would not have been recognized at common law in Oregon in 1857. The same holds true for ESIS which would be viewed as the employer's agent.

As to the breach of fiduciary duty claim, assuming that such a claim was generally recognized at common law in 1857, but see Hanggi v. Hartford Fire Insurance Co., 132 Or. App. 601, 608, 889 P.2d 365, 369 (1995) (discussing argument that breach of fiduciary duty claims are not torts, but are based upon principles of trust law developed in courts of equity), the claim in this case is that by accepting Willard Sworden's workers' compensation claim, the employer breached a duty of care owed by the employer to the employee. See Georgetown Realty, Inc. v. The Home Ins. Co., 313 Or. 97, 111 n.7, 831 P.2d 7, 14 n.7 (1992) (breach of fiduciary duty claim alleges a breach of the duty of care that the law implies from the relationship).

As with the fraud claim, because the workers' compensation system did not exist in 1857, this claim is properly viewed as a claim of "like nature" to one alleging that an employer breached its fiduciary duty to its employee when by admitting negligence in

30 - OPINION & ORDER

a civil action brought by the employee against the employer for a work-related injury or disease. There is no support for a conclusion that the law would have implied a fiduciary relationship between an employee and employer in the context of litigation between the two. No such claim would have been recognized at common law in 1857. The same holds true for ESIS which would be viewed as the employer's agent. Moreover, for both the fraud and breach of fiduciary duty claims, I have assumed that the plaintiff is the actual employee. Because the claims in this case are brought by the employee's estate and adult child, the existence of the claims at common law in 1857 is even more remote.

Because neither the fraud nor the breach of fiduciary duty claims would have been recognized at common law in 1857, the deprivation of the right to bring these claims, caused by the application of the workers' compensation exclusive remedy provision, does not violate the remedy provision of Article I, section 10.

Given my conclusion that Article I, section 10 does not protect these claims, I need not analyze the second question in the Smothers remedy clause analysis of whether the Oregon Legislature has provided a constitutionally adequate substitute remedy.

In sum, the exclusive remedy provision of the workers' compensation laws initially applies to all of the claims brought by these plaintiffs in this action. Assuming for the purposes of this motion that the acceptance of Willard Sworden's claim was somehow in error and that plaintiffs could obtain a final order of denial of the claim, the exclusive remedy provision still prevents them from bringing their tort claims in this case because in 1857, the

31 - OPINION & ORDER

common law of Oregon did not recognize any of the causes of action plaintiffs bring here for the alleged injury. Thus, the Oregon Legislature's depriving plaintiffs of their right to bring these claims does not violate Article I, section 10 of the Oregon Constitution.

III. Issues Regarding Alcoa

Plaintiffs argue that even if there is immunity afforded to Reynolds by the exclusivity provision and that such immunity does not violate Article I, section 10, Alcoa is not protected by the exclusivity provision in any event. I reject plaintiffs' argument.

The undisputed facts are that at all times Reynolds employed Willard Sworden. Mar. 30, 2005 Declr. of Dale Perdue at ¶ 3. On May 3, 2000, several months before the plant shut down permanently, Alcoa purchased Reynolds. Id. at ¶ 4. As noted in the background section of this Opinion, the purchase was in the form of a merger between Reynolds and a wholly-owned subsidiary of Alcoa named RLM Acquisition Corporation. Id. at ¶¶ 5-7. The surviving entity of that merger is Reynolds Metals Company, a wholly-owned subsidiary of Alcoa. Id. at ¶ 8. From the time of purchase on May 3, 2000, until the Troutdale plant shut down permanently in the fall of 2000, Reynolds continued to operate the plant. Id. at ¶ 9.

Based on this evidence, I agree with defendants that the record demonstrates that Reynolds alone employed Willard Sworden for the duration of his employment at the Troutdale plant, even after the purchase by Alcoa. Before the merger, he was employed by Reynolds and after the merger, he was employed by Reynolds the subsidiary company, still an entity in its own right.

Although there appears to be a split of authority, with no

32 - OPINION & ORDER

decision from the Oregon courts regarding Oregon law, I follow the authority holding that a subsidiary's exclusive remedy protection applies to the parent corporation unless the parent corporation commits a separate act. E.g., Waste Mgmt, Inc. v. Superior Ct., 119 Cal. App. 4th 105, 113, 13 Cal. Rptr. 3d 910, 916 (2004) (where "a subsidiary corporation has satisfied its obligation to an employee by securing the payment of workers' compensation benefits, the employee cannot hold the parent corporation liable for harm suffered by the employee in the course of employment unless the parent corporation's alleged acts of negligence are separate from those of the subsidiary"); see also Day v. NLO, 811 F. Supp. 1271, 1283 (S.D. Ohio 1992) (parent corporation may be liable only if it has taken an affirmative action "apart from its relationship to the subsidiary"); Aragon v. Clover Club Foods Co., 857 P.2d 250, 256 (Utah Ct. App. 1993) (when a worker asserts derivative liability, exclusivity applies, otherwise a claimant could "have his cake and eat it too" by getting workers' compensation benefits and the right to sue); but see Woodling v. Garrett Corp., 813 F.2d 543, 551 (2d Cir. 1987) (noting cases where courts have declined to disregard the corporate veil to extend one corporation's workers' compensation immunity to another). Plaintiffs have no viable separate claim against Alcoa.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

33 - OPINION & ORDER

CONCLUSION

Defendants' summary judgment motions (#13, #17) are granted.

IT IS SO ORDERED.

Dated this __8th__ day of __June__, 2005.

_/s/ Dennis James Hubel_
Dennis James Hubel
United States Magistrate Judge

34 - OPINION & ORDER